TOREY JOSEPH FAVAROTE (SBN: 198521)
DAVID H. DANNING (SBN: 354477)
GLEASON & FAVAROTE, LLP
3646 Long Beach Blvd., Suite 203
Long Beach, California 90807
Telephone: (213) 452-0510
Facsimile: (213) 452-0514
tfavarote@gleasonfavarote.com
ddanning@gleasonfavarote.com

Attorneys for Defendants
C&W FACILITY SERVICES, INC.,
CUSHMAN &WAKEFIELD U.S., INC.,
CUSHMAN & WAKEFIELD OF CALIFORNIA, INC.,
and CUSHMAN & WAKEFIELD WESTERN, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ANTHONY VILLA, on behalf of himself and others similarly situated,

Plaintiff,

vs.

C&W FACILITY SERVICES, INC.; CUSHMAN &WAKEFIELD U.S., INC.; CUSHMAN & WAKEFIELD OF CALIFORNIA, INC.; CUSHMAN & WAKEFIELD WESTERN, INC.; and DOES 1 to 100, inclusive,

Defendants.

Case No. 5:25-cv-10646

**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332(d), 1441 AND 1446**

State Action Filed: October 31, 2025
Removal Filed:
Trial Date: none

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS


I. DESCRIPTION OF THE ACTION. .... 1

II. TIMELINESS OF REMOVAL. .... 1

III. DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT. .... 2

IV. DIVERSE CITIZENSHIP OF THE PARTIES. .... 3

V. CLASS SIZE. .... 4

VI. AMOUNT IN CONTROVERSY .... 4

A. Plaintiff's Alleged Unpaid Meal Period Premiums Under Labor Code Sections 226.7 And 512 Provide At Least $4,160,000 To The Amount In Controversy. .... 7

B. Plaintiff's Claim For Overtime Wages Under Labor Code Sections 510 And 1194 Provide At Least $3,120,000 To The Amount In Controversy. .... 8

C. Attorney's Fees add $1,820,000 to The Amount in Controversy .... 9

VII. NO BASIS FOR DECLINING JURISDICTION EXISTS. .... 10

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

Arias v. Residence Inn by Marriott,
936 F.3d 920 (9th Cir. 2019) ..... 10, 15

Boeing Co.,
47 F.3d 1404 (5th Cir. 1995) ..... 10

Briggs v. Merck Sharp & Dohme,
796 F.3d 1038 (9th Cir. 2015) ..... 6

Burns v. Windsor Ins. Co.,
31 F.3d 1092 (11th Cir. 1994) ..... 9, 12

Bush v. Cheaptickets, Inc.,
425 F.3d 683 (9th Cir. 2005) ..... 6

Dart Cherokee Basin Operating Co., LLC v. Owens,
574 U.S. 81 (2014) ..... 8

Dawson v. Hitco Carbon Composites, Inc.,
2016 WL 7235629 (C.D. Cal. Dec. 14, 2016) ..... 13

Elizarraz v. United Rentals, Inc.,
2019 WL 1553664 (C.D. Cal. Apr. 9, 2019) ..... 13

Exxon Mobil Corp. v. Allapattah Servs., Inc.,
545 U.S. 546 (2005) ..... 15

Fritsch v. Swift Transportation Co. of Arizona, LLC,
899 F.3d 785, 796 (9th Cir. 2018) ..... 15

Gaus v. Miles, Inc.,
980 F.2d 564 (9th Cir. 1992) ..... 11

Gibson v. Chrysler Corp.,
261 F.3d 927 (9th Cir. 2001) ..... 15

Guglielmino v. McKee Foods Corp.,
506 F.3d 696 (9th Cir. 2007) ..... 8

Hender v. Am. Directions Workforce LLC,
2020 WL 5959908 (E.D. Cal. Oct. 8, 2020) ..... 14

Kantor v. Wellesley Galleries, Ltd.,
704 F.2d 1088 (9th Cir. 1983) ..... 4, 5

Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,
199 F.Supp.2d (C.D. Cal. 2002) ..... 9, 11

LeBlanc v. Cleveland,
248 F.3d 95 (2d Cir. 2001) ..... 4

Lewis v. Verizon Communications, Inc.,
627 F.3d 395 (9th Cir. 2010) .......... 10
Luckett v. Delta Airlines, Inc.,
171 F.3d 295 (5th Cir. 1999) .......... 10
Lundquist v. Precision Valley Aviation, Inc.,
946 F.2d 8 (1st Cir. 1991) .......... 4
Newcombe v. Adolph Coors Co.,
157 F.3d 686 (9th Cir. 1998) .......... 6
Sanchez v. Monumental Life Ins. Co.,
102 F.3d 398 (9th Cir. 1996) .......... 9
Serrano v. 180 Connect, Inc.,
478 F.3d 1018 (9th Cir. 2007) .......... 3
Singer v. State Farm Mutual Auto Ins. Co.,
116 F.3d 373 (9th Cir. 1997) .......... 9
State Farm Mut. Auto Ins. Co. v. Dyer,
19 F.3d 514 (10th Cir. 1994) .......... 4
Taylor v. United Rd. Servs., Inc.,
313 F. Supp. 3d 1161 (E.D. Cal. 2018) .......... 3
White v. FCI USA, Inc.,
319 F. 3d 672 (5th Cir. 2003) .......... 11

**Federal Statutes**

28 U.S.C. § 1332(a)(1) .......... 3
28 U.S.C. § 1332(c)(1) .......... 3
28 U.S.C.§§ 1332(d), 1441 and 1446 .......... 1
28 U.S.C. § 1332(d)(2) .......... 3
28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a) .......... 2
28 U.S.C. § 1332(d)(2)(A) .......... 4
28 U.S.C. § 1332(d)(3) and (4) .......... 10
28 U.S.C. § 1332(d)(6) .......... 4
28 U.S.C. § 1332(d)(5) .......... 2
28 U.S.C. § 1441(a) .......... 2, 3
28 U.S.C. § 1446 .......... 2
28 U.S.C. § 1446(b) .......... 2
28 U.S.C.A. § 1332 .......... 4

**Federal Rules**

F.R.C.P Rule 6(a)(1) .......... 2

**TO THE CLERK OF THE ABOVE ENTITLED COURT, PLAINTIFF ANTHONY VILLA, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendant C&W Facility Services, Inc. (hereinafter "Defendant" or "CWS"), with the agreement of Cushman &Wakefield U.S., Inc. Cushman & Wakefield of California, Inc., and Cushman & Wakefield Western, Inc.. hereby removes the below referenced action from San Benito County Superior Court in the state of California to the United States District Court for the Northern District of California. Removal is based on 28 USC sections 1332(d) (the Class Action Fairness Act), 1441(b) and 1446, as there are more than 100 proposed class members, the parties are diverse, and the amount in controversy is more than $5,000,000 as it is at least $9,100,000. As noted above, all defendants consent to this removal.

## I. <u>DESCRIPTION OF THE ACTION.</u>

On October 31, 2025, Plaintiff, Anthony Villa, on behalf of himself and all others similarly situated, filed a putative class action complaint against Defendant in the Superior Court of California, County of San Bentio ("Superior Court"), Case No. CU-25-00290, wherein he alleges the following causes of action: (1) Failure to Pay Wages for All Hours Worked; (2) Failure to Pay Overtime Compensation; (3) Failure to Authorize and Permit Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Failure to Indemnify Necessary Business Expenses; and (6) Violation of Business and Professions Code Section 17200 *et. seq.* (hereinafter the "Complaint"). The Complaint was served on Defendant on November 17, 2023. (Declaration of David Danning "Danning Decl." ¶ 2.)

Attached as **Exhibit C** to the Danning Declaration are all other documents filed in this matter in the San Benito County Superior Court.

## II. <u>TIMELINESS OF REMOVAL.</u>

The Complaint was filed on October 31, 2025, and served on Defendant on November 17, 2025. (<u>See</u>, Ex. B Proof of Hand Service). This Notice of Removal is

therefore timely as the 30-day period after service would expire on December 17, 2025, and has been filed prior to that date. See, 28 U.S.C. Section 1446(b) and F.R.C.P Rule 6(a)(1).

## III. DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT.

Removal jurisdiction is based on 28 U.S.C. section 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). In relevant part, CAFA grants federal district courts original jurisdiction over civil class-action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth herein, this case meets all of CAFA's requirements for removal, and is timely and properly removed by the filing of this Notice of Removal.

This Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the primary defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and at least one defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5), 1453(a); Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) ("Once the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity jurisdiction over class actions if: (1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant."). Under CAFA, there is no presumption against removal. Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1168 (E.D. Cal. 2018).

/ / /

## IV. DIVERSE CITIZENSHIP OF THE PARTIES.

CAFA's diversity requirement is satisfied when at least *one* plaintiff is a citizen of a state different from at least *one* defendant. 28 U.S.C. §§ 1332(d)(2).

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. Kantor v. Wellesley Galleries, Ltd., 704 F.2d 1088 (9th Cir. 1983); see also LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); see also Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Residence is *prima facie* evidence of domicile. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

Plaintiff states in his Complaint that he is a current employee for Defendant in Hollister, California. (Danning Decl., Ex. A, Complaint, ¶¶ 2-4.) For diversity purposes, a person is a "citizen" of the state in which he is domiciled. See Kantor v. Wellesly Galleries, Ltd., 704 F.2d 1088, 1090 (9th Cir. 1983). Thus, Plaintiff is a citizen of the state of California. See 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). Plaintiff seeks to represent current and former non-exempt employees of Defendant and three other entities who were employed in the state of California during the putative class period. (Danning Decl., Ex. A, Complaint, ¶ 2, 20.)

Defendant was at the time of the filing of the state court action and remains a corporation organized under the laws of the state of Massachusetts, with its principal place of business outside of the state of California. (Danning Decl. Ex. D). A corporation is a citizen of its state of incorporation and wherever it has its principal place of business. 28 USC § 1332(c)(1). Accordingly, Defendant is not a citizen of the state of California.

The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. section 1441(a); Newcombe v. Adolph Coors Co., 157 F.3d 686, 690-691 (9th Cir. 1998).

/ / /

Accordingly, because Plaintiff is a citizen of a state different from Defendant CWS, minimal diversity exists for purpose of establishing jurisdiction under CAFA. 28 U.S.C. Sections 1332(d)(2)(A); 1453(b); Bush v. Cheaptickets, Inc., 425 F.3d 683, 684 (9th Cir. 2005) (CAFA requires only minimum diversity, i.e. one diverse defendant).

## V. CLASS SIZE.

CAFA extends removal jurisdiction to civil actions in which the monetary relief claims of 100 or more persons are proposed to be tried jointly. Briggs v. Merck Sharp & Dohme, 796 F.3d 1038, 1047 (9th Cir. 2015) Removal under CAFA is proper when the number of members of all proposed plaintiff classes in the aggregate is greater than 100. 28 U.S.C.A. § 1332.

Plaintiff alleges in his Complaint that he seeks to represent a class of all non-exempt employees who allegedly suffered various Labor Code violations during the period 4 years prior to the filing of the Complaint, ostensibly October 31, 2021, to the present. (Danning Decl., Ex. A, Complaint, ¶¶ 3, 46). Defendant's records show that the alleged class is comprised of more than 5,000 proposed class members in aggregate during the alleged class period of October 31, 2021, to the present.

## VI. AMOUNT IN CONTROVERSY.

Pursuant to CAFA, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000. 28 U.S.C. § 1332(d)(6) (under CAFA, claims of individual class members aggregated to determine if the amount in controversy exceeds $5,000,000). The Complaint seeks to recover all allegedly unpaid straight time wages, all allegedly unpaid overtime wages; allegedly unpaid meal period and rest break premiums; reimbursement for allegedly unreimbursed necessary business expenses, each under multiple theories of liability. (Ex. A, Complaint, ¶¶ 15-45) In addition to alleging Labor Code violations, Plaintiff also seeks to recover under Business and Professions Code § 17200, which has a four-year statute of limitations pursuant to Section 17208. (Danning Decl., Ex. A, Complaint, ¶¶ 147-150.) As set

forth below, the amount in controversy implicated by these class-wide allegations exceeds $5,000,000.

| **Plaintiff's Alleged Claims** | **Minimum Amount in Controversy Generated** |
|---|---|
| Failure to pay overtime wages | $3,120,000 |
| Failure to pay meal period premiums | $4,160,000 |
| Attorney's fees of 25% on all of the above | $1,820,000 |
| **TOTAL** | **$9,100,000** |

"[W]here it is unclear or ambiguous from the face of a complaint whether the requisite amount in controversy is pled," the defendant only needs to establish by a "preponderance of the evidence" that the alleged claims exceed the jurisdictional minimum. See Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). Furthermore, the United States Supreme Court has determined that under CAFA, a removing Defendant need only supply a "short and plain statement of the grounds for removal" and that a notice of removal "need not contain evidentiary submissions." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84 (2014) (Holding no evidence is required upon notice of removal, and removals fall under the liberal pleading standards applicable to other pleadings).

Here, Plaintiff does not allege a total dollar amount in controversy in the Complaint. The amount in controversy is unclear from the face of the Complaint. Therefore, Defendant only needs to establish by a preponderance of the evidence that the alleged claims exceed the jurisdictional minimum. See Guglielmino, 506 F.3d at 700-701; Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996); Singer v. State Farm Mutual Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). The amount in controversy has been met based on the competent data outlined below.

While Defendant and the other named entities expressly deny the validity of Plaintiff's claims and any liability for the damages sought in his Complaint, for purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations in Plaintiff's Complaint and presume

that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). Thus, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th Cir. 2010). Critically, "**[t]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.**" Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis added).

When determining whether a plaintiff's complaint meets the jurisdictional threshold, the Court should consider the allegations in the complaint and facts set forth in the Notice of Removal. See Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiffs allegations, sufficient to support finding of jurisdiction); DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); accord Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992); White v. FCI USA, Inc., 319 F. 3d 672, 674 (5th Cir. 2003) (facially apparent from the lengthy list of damages, combined with a claim for attorneys' fees, that plaintiffs claim exceeded the jurisdictional threshold).

The requisite amount in controversy is established through an examination of the claims asserted by Plaintiff. The amount in controversy in this action far exceeds the $5,000,000 threshold, as the amount in controversy for is at least $9,100,000 considering Plaintiff's meal period and overtime claims alone as well as attorney's fees.

/ / /

/ / /

/ / /

### A. Plaintiff's Alleged Unpaid Meal Period Premiums Under Labor Code Sections 226.7 And 512 Provide At Least $4,160,000 To The Amount In Controversy.

Plaintiff's class action Complaint seeks to recover premiums for allegedly unprovided meal periods and rest breaks under Labor Code sections 226.7 and 512, as well as for allegedly deficient premiums not paid at the regular rate of pay. (Danning Decl., Exh. A, Complaint ¶¶ 29-40.) For determining the amount in controversy, the Court must assume that Plaintiff will prevail on his claims. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 1001 (C.D. Cal. 2002), citing Burns v. Windsor Ins. Co., 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")

Plaintiff's Complaint alleges that Plaintiff and the proposed class members were not provided meal periods because: 1) Defendants allegedly failed to provide sufficient time for employees to travel to designated break locations and take their breaks; 2) failed provide second meal periods for employees that worked more than 10 hours in a day; and 3) otherwise failed to authorize or permit lawful meal periods. (Danning Decl., Exh. A, Complaint ¶ 31.) Plaintiff further claims that none of the meal period premiums paid to the class members were paid at the correct regular rate of pay. Under these allegations a 100% violation rate for this claims is alleged, and is reasonable for determining the amount in controversy. For the proposed class period of October 31, 2021, to the present there are more than 160,000 two-week periods worked by the proposed class members.

However, only taking Plaintiff's allegations of alleged meal period violations at the rate of just 1 meal period violation per two-week period, the unpaid meal period premium claim is **worth a minimum** of $4,160,000. (at least 160,000 two-week periods × 1 premium × at least $26.00 average rate of pay.) **This calculation does not include Plaintiff's additional claims that premiums have not been paid at the correct regular rate of pay.**

Defendant's calculations are far **below** what courts commonly accept as reasonable. "[I]t is entirely reasonable for Defendant to allege a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods" in connection with its Notice of Removal under CAFA. Elizarraz v. United Rentals, Inc., 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019); see also Dawson v. Hitco Carbon Composites, Inc., 2016 WL 7235629, at *4 (C.D. Cal. Dec. 14, 2016) (holding a 50% violation rate is reasonable under CAFA.) Using only the **minimum** violation rate of 1 meal period violation per **two week period** the amount in controversy in this matter rises to $4,160,000.

### B. Plaintiff's Claim For Overtime Wages Under Labor Code Sections 510 And 1194 Provide At Least $3,120,000 To The Amount In Controversy.

Plaintiff's class action Complaint also seeks to recover unpaid overtime wages and associated liquidated damages under Labor Code sections 510, and 1194. (Danning Decl., Exh. A, Complaint ¶¶ 23, 25.) Specifically, Plaintiff's Complaint alleges that Defendant and the other named entities would regularly require Plaintiff and the proposed class members to work off the clock, attend meetings and trainings off the clock, and would not pay all overtime worked. (Id.) Plaintiff alleges that all of these actions resulted in both unpaid overtime and minimum wages. Plaintiff further alleges that overtime wages paid were not paid at the correct regular rate of pay. (Danning Decl., Exh. A, Complaint ¶¶ 27-28.)

Plaintiff alleges that he and the proposed class members are ostensibly owed overtime for every shift they worked because they were required to work during every meal period and/or incurred compensable travel time during every meal period. Courts have found similar allegations to support a claim of 1-2 hours of unpaid overtime a week. Hender v. Am. Directions Workforce LLC, 2020 WL 5959908, at *7 (E.D. Cal. Oct. 8, 2020) (Holding up to a violation rate of 20% to 40%, or one to two hours of overtime a week, is reasonable in connection with calculating the amount in controversy under CAFA.)

At a minimum, Plaintiff's alleged unpaid overtime claim adds at least $3,120,000 (at least 160,000 two-week periods × 0.5 hours of overtime per two-week period at $39.00 [at least $26.00 average rate of pay × 1.5]) to the amount in controversy.

Using less than the **minimum** violation rate of 0.5 hours of unpaid overtime per two-week period, Plaintiff's overtime claim also far exceeds the amount in controversy on its own, even before accounting for attorneys' fees.

### C. Attorney's Fees add $1,820,000 to The Amount in Controversy

Using the lowest figures possible for Plaintiff's minimum wage, overtime, meal period, and rest break claims (without the regular rate issues) the amount in controversy is $7,280,000 **before considering attorney's fees**. In determining the amount in controversy, the Ninth Circuit has unambiguously and repeatedly held for almost 15 years that in wage and hour class actions courts may and must assume attorney's fees of an additional 25%.

"As we stated in Fritsch, "[w]e have long held (and reiterated [in early 2018]) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." 899 F.3d at 794. In Fritsch, **we reaffirmed that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."** Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) citing Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 796 (9th Cir. 2018), see also Gibson v. Chrysler Corp., 261 F.3d 927, 942 (9th Cir. 2001), holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).

Adding an additional 25% to the lowest possible amounts for Plaintiff's minimum wages, overtime wages, meal period, and rest break claims the minimum amount in controversy in this action is more than $9,100,000 ($7,280,000 + an additional 25% or $1,820,000). At least four of Plaintiff's claims support an award

of attorney's fees. Talking Plaintiff's Complaint at its face, as the Court is required to do, the amount in controversy for Plaintiff's claims is far more than $5,000,000. There is a legal certainty that the amount in controversy for CAFA removal is met.

## VII. NO BASIS FOR DECLINING JURISDICTION EXISTS.

There is no basis for this Court to decline jurisdiction. The CAFA permits a district court to decline to exercise its jurisdiction only in specified instances where a primary defendant is a citizen of the forum state. 28 U.S.C. § 1332(d)(3) and (4). Here, Defendant is the only entity which employed Plaintiff and is indisputably not a citizen of California.

Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record: Joseph Lavi, Vincent C. Granberry, Jeffery D. Klein, and Margaux K. Gundzik of Lavi and Ebrahimian, LLP.

In addition, a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of San Benito California.

WHEREFORE, having provided notice as is required by law, the above-titled action should be removed from the Superior Court for the County of San Benito to this Court.

Dated: December 12, 2025

GLEASON & FAVAROTE, LLP
TOREY JOSEPH FAVAROTE
DAVID H. DANNING

By:/s/ David H. Danning
David H. Danning

Attorneys for Defendants C&W FACILITY SERVICES, INC., CUSHMAN &WAKEFIELD U.S., INC., CUSHMAN & WAKEFIELD OF CALIFORNIA, INC., and CUSHMAN & WAKEFIELD WESTERN, INC.

# PROOF OF SERVICE

I, Thomas Steinhart, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of Los Angeles, California. I am over the age of 18 years and not a party to the within action. My business address is Gleason & Favarote, LLP, 3646 Long Beach Blvd., Suite 203, Long Beach, CA 90807.

On December 12, 2025, I served a copy(ies) of the following document(s):

**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. SECTIONS 1332(d), 1441 AND 1446**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| Attorney | Party(ies) Served | Method of Service |
|---|---|---|
| Joseph Lavi, Esq.<br>Vincent C. Granberry, Esq.<br>Jeffrey D. Klein, Esq.<br>Margaux K. Gundzik, Esq.<br>LAVI & EBRAHIMIAN, LLP<br>8889 W. Olympic Boulevard, Suite 200<br>Beverly Hills, California 90211<br>Telephone: (310) 432-0000<br>Facsimile: (310) 432-0001<br>Email: jlavi@lelawfirm.com<br>vgranberry@lelawfirm.com<br>jklein@lelawfirm.com<br>mgundzik@lelawfirm.com | Attorneys for Plaintiff ANTHONY VILLA, on behalf of himself and others similarly situated | First Class Mail |

☒ [BY MAIL] I placed the sealed envelope(s) for collection and mailing by following the ordinary business practice of Gleason & Favarote, LLP, Long Beach, California. I am readily familiar with Gleason & Favarote, LLP's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ [BY HAND] I directed the sealed envelope(s) to the party(ies) so designated on the service list to be delivered by Ace Attorney Service, Inc. this date.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct, and that this declaration was executed on December 12, 2025, at Long Beach, California.

Thomas Steinhart